UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| JAMES LEE MOSLEY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> RIPLEY COUNTY INDIANA, ) <br> INDIANA DEPT OF CORRECTIONS, ) <br> GEO PRISON, ) <br> RIPLEY COUNTY COURTS, ) <br> RYAN KING, ) <br> RYAN MARSHALL, ) <br> ) <br> Defendants. ) | No. 4:21-cv-00167-SEB-DML |

**Order Screening Amended Complaint, Denying Motion for Appointment of Counsel, and Directing Entry of Final Judgment**

## I.   Background

Plaintiff James Lee Mosley is a prisoner currently incarcerated at Putnamville Correctional Facility. He filed this civil action under 42 U.S.C. § 1983 alleging violations of his rights under the United States Constitution based on his conviction for a probation violation and his subsequent incarceration in the New Castle Correctional Facility ("New Castle").

In his original complaint, Mr. Mosley attempted to sue: (1) the Ripley County Courts; (2) the Indiana Department of Correction ("IDOC"); (3) "GEO Prison," which the Court understood as a reference to The GEO Group, Inc. ("GEO"), the private company that operates New Castle for the IDOC; (4) Judge Ryan King; and (5) Prosecutor Ryan Marshall. Dkt. 1. Mr. Mosley alleged that the defendants were liable because they had improperly prosecuted him for a probation violation and, if they had not done so, he would not have been in prison at the time he received the COVID-19 vaccine, would not have taken the COVID-19 vaccine, and would

not have gone blind in one eye as a result. *Id*. He also complained that "they" still had him on probation, even though his probation had expired, which was illegal. *Id.*

At screening, the Court dismissed all of Mr. Mosley's claims for the following reasons:

- Federal claims

    o Ripley County Courts—dismissed for failure to state a claim upon which relief can be granted because the Ripley County Courts are not a suable entity.

    o IDOC—dismissed for failure to state a claim upon which relief can be granted because the IDOC is protected by Eleventh Amendment immunity.

    o Judge King and Prosecutor Marshall—dismissed because they are entitled to absolute immunity for their actions, so long as they acted within their jurisdiction, which they did.

    o GEO—dismissed for failure to state a claim upon which relief can be granted because Mr. Mosley identified no GEO policy or practice that caused the constitutional injury at issue.

- State claims

    o Judge King and Prosecutor Marshall—dismissed because they are entitled to immunity for their actions.

    o IDOC and Ripley County Courts—dismissed for failure to state a claim upon which relief can be granted because the Indiana Tort Claims Act provided immunity.

    o GEO—dismissed for failure to state a claim upon which relief can be granted because there were no allegations that GEO engaged in any wrongdoing.

Dkt. 15. The Court ordered Mr. Mosley to show cause why Judgment consistent with the Court's Order should not issue. *Id.* at 7–8. Rather than attempt to show cause, Mr. Mosley filed an amended complaint. Dkts. 17, 18. The amended complaint does not address any of the potentially fixable issues raised by the Screening Order—such as pleading facts showing that a

GEO policy or practice caused Mr. Mosley's injury. Instead, in the amended complaint, Mr. Mosley attempts to sue a whole new set of defendants—(1) the City of Versailles, Indiana; (2) Ripley County Sheriff Jeff Cumberworth; (3) Ripley County Sheriff's Department Deputy Randy Thieman; (4) probation officer Justin Lynette; and (5) Ripley County Sheriff's Department Lieutenant Randy Holt. *Id.* And he no longer specifically mentions wanting to recover damages for losing sight in his eye. *Id.* Instead, he seeks to recover damages for the time that he allegedly spent in prison awaiting the Indiana Court of Appeals decision overturning his conviction for the probation violation. *Id.*

Mr. Mosley did not respond to the Court's Order to Show Cause, so the claims against the original defendants are due to be dismissed with prejudice. Because Mr. Mosley is "prisoner," however, the Court must also screen his amended complaint. *See* 28 U.S.C. § 1915A(a), (c). The Court also resolves Mr. Mosley's pending motion for assistance with recruiting counsel.

## II.     Motion for Assistance with Recruiting Counsel

Mr. Mosley has filed a motion for assistance with recruiting counsel. Dkt. 16. Litigants in federal civil cases do not have a constitutional or statutory right to court-appointed counsel. *Walker v. Price*, 900 F.3d 933, 938 (7th Cir. 2018). Instead, 28 U.S.C. § 1915(e)(1) gives courts the authority to "request" counsel. *Mallard v. United States District Court*, 490 U.S. 296, 300 (1989). As a practical matter, there are not enough lawyers willing and qualified to accept a pro bono assignment in every pro se case. *See Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014) ("Whether to recruit an attorney is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.").

"'When confronted with a request under § 1915(e)(1) for pro bono counsel, the district court is to make the following inquiries: (1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021) (quoting *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007)). These two questions "must guide" the Court's determination whether to attempt to recruit counsel. *Id.* These questions require an individualized assessment of the plaintiff, the claims, and the stage of litigation. *See Pruitt*, 503 F.3d at 655-56. The Seventh Circuit has specifically declined to find a presumptive right to counsel in some categories of cases. *McCaa v Hamilton*, 893 F.3d 1027, 1037 (7th Cir. 2018) (Hamilton, J., concurring); *Walker*, 900 F.3d at 939.

The first question, whether litigants have made a reasonable attempt to secure private counsel on their own "is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." *Eagan*, 987 F.3d at 682; *see also Thomas v. Anderson*, 912 F.3d 971, 978 (7th Cir. 2019) (because plaintiff did not show that he tried to obtain counsel on his own or that he was precluded from doing so, the judge's denial of these requests was not an abuse of discretion). Plaintiff has attempted to contact multiple attorneys with requests for representation without success. *See* dkt. 16 at 2. Thus the Court finds that he has made a reasonable effort to recruit counsel on his own before seeking the Court's assistance.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims himself." *Eagan*, 987 F.3d at 682 (citing *Pruitt*, 503 F.3d at 655). "Specifically, courts should consider 'whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's

4

capacity as a layperson to coherently present it to the judge or jury himself.'" *Id.* (quoting *Pruitt,* 503 F.3d at 655). "This assessment of the plaintiff's apparent competence extends beyond the trial stage of proceedings; it must include 'the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial.'" *Id.* (quoting *Pruitt,* 503 F.3d at 655).

Mr. Mosley reports that he has no difficulty reading or writing English, that he has earned a GED, and that he completed some college at Ball State and Ivy Tech. Dkt. 16 at 2. He also repots that he is legally blind in his right eye and that his left eye is very damaged. *Id.* at 3. As a result, seeing is very difficult, and he has problems staying focused on researching legal cases. *Id.* He does not have the right glasses, and he cannot get them through his current facility. *Id.* at 4. In addition, legal research causes dizziness and headaches. *Id.* at 3. He also reports that he has not received any assistance with this case from others. *Id.*

This case is in its absolute infancy. At this stage of the case, Mr. Mosley is tasked only with providing a "short and plain statement" of his claims showing that he is entitled to relief. Federal Rule of Civil Procedure 8(a)(2). The Court appreciates that Mr. Mosley's eye conditions and lack of proper glasses make it difficult to for him to do legal research, but, to date, he has submitted two detailed and coherent complaints that make clear the factual and legal basis for his claims without any help from others. As a result, the Court finds that Mr. Mosley is competent to pursue this case *pro se* at least for purposes of filing a complaint, and his motion for assistance with recruiting counsel, dkt. [16], is **denied**. Thus, the Court proceeds to screen his amended complaint.

### III.     Screening Standard

When screening a complaint, the Court must dismiss any portion that is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Gladney v. Pendelton Corr. Facility*, 302 F.3d 773, 774 (7th Cir. 2002). The Court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327; *Gladney*, 302 F.3d at 774. To determine whether the complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Schillinger v. Kiley*, 954 F.3d 990, 993 (7th Cir. 2020). Under that standard, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court construes *pro se* complaints liberally and holds them to a "less stringent standard than formal pleadings drafted by lawyers." *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017).

### IV.     Amended Complaint

Mr. Mosely names five defendants in his amended complaint —(1) the City of Versailles, Indiana; (2) Ripley County Sheriff Jeff Cumberworth; (3) Ripley County Sheriff's Department Deputy Randy Thieman; (4) probation officer Justin Lynette; and (5) Ripley

County Sheriff's Department Lieutenant Randy Holt. He seeks compensatory and punitive damages.

A.     *Procedural Background*

As was the case with his original complaint, Mr. Mosley's amended complaint omits many procedural facts necessary to understand the context of his claims. Thus, the Court provides those facts. These facts are taken from the state-court dockets in *State v. Mosley*, Case No. 69C01-1702-F5-000008 (Ripley County) ("Probation-Violation Case"), *State v. Mosley*, Case No. 69D01-2001-F6-000028 (Ripley County) ("Invasion-of-Privacy Case), and *State v. Mosley*, Case No. 02D04-1706-F6-000692 (Allen County) ("Allen County Case"), as well as the opinion the Indiana Court of Appeals issued on May 21, 2021, in *Mosley v. State*, 171 N.E.3d 1031 (Ind. Ct. App. 2021). The Court takes judicial notice of these facts:

In 2019, Mr. Mosley was convicted of a felony in the Ripley County Circuit Court. Probation-Violation Case, Docket Entries for April 24, 2019. He was sentenced to six years of imprisonment, with all time suspended to probation. *Id.* He was also sentenced on a habitual offender sentence enhancement to three years in the IDOC, with no time suspended to probation. *Id.* The sentences were to be served consecutive to one another, meaning that Mr. Mosley would serve three years in prison followed by six years of probation. *Id.* One of the terms of his probation was that he should not make any contact with any of his victims. *Id.* At the time, neither the parties nor the trial court was aware that one of the victims—B.P.—had already died. *Mosley*, 171 N.E.3d at 1033. Another of the terms of Mr. Mosley's probation was that he not commit another criminal offense. Probation-Violation Case, Docket Entries for April 24, 2019. Finally, in sentencing Mr. Mosley, the judge ordered that Mr. Mosley's probation

would terminate after one year if he did not have any violations or pending violations and he had paid his restitution in full. *Id.*

About six months after he was sentenced, Mr. Mosley wrote a letter to B.P. apologizing for his actions. *Mosley*, 171 N.E.3d at 1033. Based on the letter, prosecutor Ryan Marshall filed an information in Ripley County Superior Court Case No. 69D-01-2001-F6-000028 charging Mr. Mosley with attempted invasion of privacy. That information was filed on January 29, 2020. Invasion-of-Privacy Case, Docket Entry for January 29, 2020.

Two days later, on January 31, 2020, a probable cause affidavit was filed in the case. *Id.*, Docket Entry for January 31, 2020. That affidavit was signed by defendant Lieutenant Randy Holt. *Id.* It stated as follows: Lieutenant Holt met with Prosecutor Marshall, who informed him that B.P.'s daughter had reported that Mr. Mosley attempted to contact her deceased mother by writing a letter. *Id.* Lieutenant Holt then personally observed the letter and the envelope, which was sent by Mr. Mosley from Branchville Correctional Facility. *Id.* Later, Ripley County Corporal Steve Sullivan met with Mr. Mosley, who—after being advised of his rights—agreed to talk and admitted that he wrote the letter to B.P. before he knew she had died. *Id.* Because Mr. Mosley had previously been ordered to have no contact with B.P., Lieutenant Holt believed that there was probable cause to believe that Mr. Mosley had committed the crime of invasion of privacy. *Id.*

The probable cause affidavit was not signed by a judge, and the docket text associated with the affidavit states, "PC NOT FOUND." *Id.*

On February 3, 2020, the Ripley Superior Court clerk issued a criminal summons notifying Mr. Mosley that an information had been filed charging him with attempted invasion of privacy, commanding him to appear in court on February 24, 2020, for an initial hearing, and

advising him that, if he failed to appear without good cause, he would be considered to be in contempt of court and an arrest warrant would be issued. *Id.*, Docket Entry for February 3, 2020. On February 18, 2020, Mr. Mosley mailed a number of filings to the Ripley Superior Court, including a motion to dismiss and a motion for transport order, which asked the Court to order that he be produced for the initial hearing. *Id.*, Docket Entries for February 24, 2020. Those filings were docketed on February 24, 2020. *Id.* On the same day, Ripley Superior Court Judge Jeffrey Sharp signed a bench warrant for Mr. Mosley's arrest because he had not appeared for the initial hearing. *Id.* The Ripley Superior Court clerk then issued a failure-to-appear warrant. *Id.* The next day, the court set another hearing date in the case and ordered that Mr. Mosley be transported to the hearing. *Id.*, Docket Entry for February 25, 2020.

On March 3, 2020, the court held an initial hearing. *Id.*, Docket Entry for March 3, 2020. The court ordered that Mr. Mosley could be released after posting a $2000.00 cash bond. *Id.*, Docket Entry for March 4, 2020. On March 20, 2020, the court denied Mr. Mosley's motion to dismiss. *Id.*, Docket Entry for March 20, 2020. Mr. Mosley attempted to file an interlocutory appeal, but the Indiana Court of Appeals denied jurisdiction on May 29, 2020. *Id.*, Docket Entry for May 29, 2020. On October 7, 2020, the State of Indiana moved to dismiss the case without prejudice. *Id.*, Docket Entry for October 7, 2020. That motion was granted on October 8, 2020. *Id.*, Docket Entry for October 8, 2020.

Meanwhile, in the underlying felony case that generated the no-contact order and the conditions of probation, Case No. 69C01-1702-F5-000008, probation officer Cody Tillison and director of court services Shannon Schmaltz petitioned the court to hold a probation violation hearing based on the fact that Mr. Mosley had been charged with a new crime. Probation-Violation Case, Docket Entry for February 7, 2020. Judge Ryan King reviewed the petition and

found that it contained facts sufficient to establish probable cause for the issuance of an arrest warrant for a violation of terms of probation. *Id.* The Ripley Circuit Court clerk issued an arrest warrant the same day, and it was served on March 3, 2020. *Id.*, Docket Entries for February 7, 2020, and March 3, 2020. Judge King held an initial hearing on the probation violation on March 5, 2020, during which he appointed counsel to represent Mr. Mosley. *Id.*, Docket Entry for March 5, 2020.

Judge King held a final hearing on the probation violation on October 22, 2020. *Id.*, Docket Entries for October 22, 2020, and October 28, 2020. He found that the State of Indiana had proven by a preponderance of the evidence that Mr. Mosley violated the conditions of his probation by committing the offense of attempted invasion of privacy. *Id.*, Docket Entry for October 28, 2020. As a result, Judge King revoked three years of Mr. Mosley's suspended sentence, meaning that Mr. Mosley would now have to serve six years in prison instead of three. *Id.*

Mr. Mosley appealed that decision. On May 21, 2021, the Indiana Court of Appeals reversed his conviction, finding that the no-contact-order was void as to deceased victims and that Mr. Mosley's probation could not be revoked for violating it. *Mosley*, 171 N.E.3d at 1035. After the Court of Appeals issued its decision, Judge King vacated the sentence he had previously imposed in connection with the probation violation. Probation-Violation Case, Docket Entry for July 19, 2021.

While all of these proceedings were happening in Ripley County, Mr. Mosley was also facing charges in Allen County. Specifically, in June 2017, he was charged with home improvement fraud in Allen County Superior Court, Case No. 02D04-1706-F6-000692. Allen

County Case, Docket Entry for June 20, 2017. On September 21, 2017, he was sentenced to two years in the IDOC in that case. *Id.*, Docket Entries for September 21, 2017.

B.      *Additional Allegations from Mr. Mosley's Amended Complaint*

Mr. Mosley's amended complaint includes the following additional relevant allegations:

Mr. Mosley was in the custody of the IDOC in late January and early February 2020 in connection with the Allen County case. Dkt. 17 at 5. On March 3, 2020, he was transported to Ripley County, and defendant Deputy Randy Thieman read him the arrest warrants for both the revocation-of-probation case and the attempted-invasion-of-privacy case. After his March 3 initial hearing in the invasion-of-privacy case, Mr. Mosley was transported back to IDOC custody to finish out his sentence from the Allen County case. Dkt. 17 at 2. On June 18, 2020, Mr. Mosley finished that sentence, was released from the IDOC, and was transported back to the Ripley County Jail on the pending cases out of that county. He remained at Ripley County Jail until October 20, 2020, when Judge King revoked his probation. At that point, he was sent back to IDOC custody, where he remained until July 20, 2021, when he was released after the Indiana Court of Appeals reversed Judge King's decision in the probation-violation case.

When Mr. Mosley was released, it was with the stipulation that he report to Ripley County probation. Mr. Mosley did so on July 21, 2020, and told defendant probation officer Justin Lynnette that his plea agreement stated "an agreed-upon stipulation of 1 yr of probation and his probation had expired." Dkt. 17 at 7. Mr. Lynnette stated that he would investigate. At their next meeting, Mr. Lynnette told Mr. Mosley that he would remain on probation for the

whole six years or until his restitution was paid.[1] Mr. Mosley told Mr. Lynnette that "is not what the higher courts state in case law," but Mr. Lynnette replied that "he is no att[orney]." *Id.*

## V.  Discussion

Applying the screening standard to the facts alleged in the amended complaint, the amended complaint must be dismissed. The Court discusses his claims against the various defendants separately, below.

A.  *City of Versailles, Indiana*

Mr. Mosley's amended complaint lists the City of Versailles, Indiana, as a defendant in the caption, *see* dkt. 17 at 1, apparently because the Ripley County Courts are located in Versailles, *id.* at 4. But the amended complaint includes no allegations that the City of Versailles or anyone associated with the City of Versailles engaged in any wrongdoing. Accordingly, Mr. Mosley's claims against the City of Versailles, Indiana, are **dismissed for failure to state a claim upon which relief can be granted**.

B.  *Sheriff Cumberworth*

Mr. Mosley also names Sheriff Cumberworth as a defendant.  A defendant can only be liable for the actions or omissions in which he personally participated. *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017); *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Locke v. Haessig*, 788

---

[1] Mr. Lynnette's statement was correct. As stated above, Mr. Mosley was subject to a six term of probation that would terminate after one year only if Mr. Mosby did not have any violations or pending violations *and* he had paid his restitution in full. *See* Probation-Violation Case, Docket Entries for April 24, 2019.

F.3d 662, 669 (7th Cir. 2015). Here, when stripped of conclusory language[2], Mr. Mosley's amended complaint includes no factual allegations plausibly suggesting that Sheriff Cumberworth personally engaged in any wrongdoing. In addition, given his title of Sheriff of Ripley County, it is not plausible that Sheriff Cumberworth would have been personally involved with any of the actions described in the facts section of the amended complaint.

To the extent that Mr. Mosley intended to sue Sheriff Cumberworth in his official capacity, such claims are actually claims against the Ripley County Sheriff's Department. To state a claim against the Ripley County Sheriff's Department, Mr. Mosley "must identify an action taken by the municipality, the requisite degree of culpability, and a causal link between the municipality's action and the deprivation of federal rights. A municipality 'acts' through its written policies, widespread practices or customs, and the acts of a final decisionmaker." *Levy v. Marion Co. Sheriff*, 940 F.3d 1002, 1010 (7th Cir. 2019) (internal citations omitted). Here, when shorn of its legal conclusions,[3] Mr. Mosley's amended complaint includes no facts suggesting that the harm he suffered in this case—being incarcerated for more than a year than he believes he should have been—was caused by the practices or customs of the Ripley County

---

[2] Sheriff Cumberworth is mentioned specifically only twice outside of the "Parties" section of the amended complaint: (1) in Count I, where Mr. Mosley alleges that Sheriff Cumberworth was "deliberately indifferent to Mr. Mosley" through his "actions and inactions," dkt. 17 at 7; and (2) in Count II, where Mr. Mosley alleges that Sheriff Cumberworth has unidentified "customs, practices, and policies" that violated his constitutional rights, *Id.* at 9. The Court is not required to accept such conclusory statements as true when deciding whether Mr. Mosley has stated a claim upon which relief can be granted. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[3] Mr. Mosley alleges in conclusory fashion that "Jeff Cumberworth Sheriff [has] customs, practices, and policies that violated Mr. Mosley 8th Amendment Rights" and that "the Defendants policy of inactions and its failure to implement customs, practices, and policies were deliberately against such customs, practices, and policies including the obvious that the protected person was deceased[,] which violated Mr. Mosley 8th Amendment rights." Dkt. 17 at 9.

13

Sheriff's Department or the acts of a final decisionmaker of the Ripley County Sheriff's Department.

Accordingly, Mr. Mosley's claims against Sheriff Cumberworth are **dismissed for failure to state a claim upon which relief can be granted**.

C.   *Lieutenant Holt*

Mr. Mosley frames his claims against Lieutenant Holt in terms of various constitutional theories—Eighth Amendment deliberate indifference, "class of one" Equal Protection claim, Eighth Amendment *Monell* claims, Thirteenth Amendment involuntary servitude claims, and constitutional claims for false arrest, imprisonment, and malicious prosecution, *see* dkt. 17 at 7–11—but the underlying essence of all the claims is the same: Mr. Mosley is attempting to hold Lieutenant Holt liable for the time he was incarcerated between June 2020 and July 2021, which incarceration Mr. Mosley claims was improper. The basis for holding Lieutenant Holt responsible for that allegedly wrongful incarceration is that Lieutenant Holt knew that B.P. was already dead when Mr. Mosley tried to contact her, so he knew or should have known that there was no probable cause to arrest him for attempted invasion of privacy, and he should not have signed the affidavit of probable cause in the invasion-of-privacy case. The problem with this claim is that—as Mr. Mosley's complaint recognizes, *see, e.g.*, dkt. 17 at 1—Lieutenant Holt's probable-cause affidavit was never signed by a judge and no arrest warrant was issued based on the affidavit, the docket in the invasion-of-privacy case reflects that no probable cause was found after review of the affidavit, and Mr. Mosley was never detained because of the affidavit. Instead, his detention followed after Prosecutor Marshall filed an information in the invasion-of-privacy case. That is, even if Lieutenant Holt lacked probable-cause to sign the affidavit, Mr. Mosley has not plausibly alleged that Lieutenant Holt's act of signing of the probable-cause

14

affidavit caused him any harm. And, in the absence of harm, Mr. Mosley has failed to state a claim upon which relief can be granted. To the extent that Mr. Mosley is alleging that Lieutenant Holt's probable-cause affidavit did, in fact, cause him to be detained in the invasion-of-privacy case, such claims are frivolous because they are contradicted by the state-court docket, of which the Court takes judicial notice. Accordingly, Mr. Mosley's claims against Lieutenant Holt are **dismissed for failure to state a claim upon which relief can be granted and as factually frivolous**.

D.     *Deputy Thieman*

Again, Mr. Mosley's claims against Deputy Thieman are expressed in various ways, but they all amount to the same thing: There was never any probable cause to detain Mr. Mosley—whether in the violation-of-probation case or the invasion-of-privacy case—based on his attempts to contact B.P., and everyone who played a part in that detention—including Deputy Thieman—should be held responsible. Here, though, the only allegations related to Deputy Thieman are that he read Mr. Mosley the warrants in the invasion-of-privacy case and the violation-of-probation case. Thus, the Court understands Mr. Mosley to be claiming that Deputy Thieman violated his constitutional rights by falsely arresting him.

Mr. Mosley was, by his own telling, already in custody and serving his sentence from the Allen County case when the warrants were read—and would have remained in custody for at least another several months even if Deputy Thieman had never read him the warrants. As a result, there is no plausible basis to conclude that Deputy Thieman's actions caused Mr. Mosley any harm. But, even if reading the warrants amounted to an "arrest" and somehow caused Mr. Mosley's detention to be prolonged, to state a claim for unlawful arrest based on a warrant later determined to have an inadequate factual foundation, Mr. Mosley must allege either that the

15

warrant was facially invalid or that Deputy Thieman knew that the warrant had been issued without probable cause. *Williamson v. Curran*, 714 F.3d 432, 443–444 (7th Cir. 2013) ("Generally, a person arrested pursuant to a facially valid warrant cannot prevail in a § 1983 suit for false arrest; this is so even if the arrest warrant is later determined to have an inadequate factual foundation. There was (and still is), however, a recognized exception for situations where officers responsible for bringing about an unlawful arrest knew that the arrest had issued without probable cause; this is particularly true of officers who knew that those who obtained the warrant had deceived the authorizing body." (cleaned up)). Here, the arrest warrants in question were facially valid, and Mr. Mosley makes no allegations plausibly supporting the inference that Deputy Thieman knew that the warrants had been issued without probable cause. Accordingly, his claims against Deputy Thieman are **dismissed for failure to state a claim upon which relief can be granted**.

E.      *Probation Officer Lynnette*

Finally, Mr. Mosley pursues constitutional claims against his probation officer, Justin Lynnette. Mr. Lynnette's only alleged involvement in this case is that he refused to release Mr. Mosley from probation and instead told Mr. Mosley that he would remain on probation for six years or until he paid off his restitution. Mr. Mosley alleges that there is something legally infirm about requiring him to pay off his restitution before being released from probation and seeks damages for being forced to remain on probation for more than one year.[4]

But Mr. Lynnette's involvement in implementing the court's sentence does not reflect any misconduct on his part. Mr. Mosley's conviction for violating probation was overturned,

---

[4] To the extent that Mr. Mosley is claiming that his sentence did not include a condition that he pay off his restitution to earn early release from probation, his claim is contradicted by judicially noticeable documents in the underlying criminal case and is factually frivolous.

but his underlying felony conviction and sentence were not. As a result, after the Indiana Court of Appeals issued its opinion, Mr. Mosley's sentence reverted to what it had been before the probation violation conviction—three years executed in the IDOC followed by six years of probation, with the caveat that his probation would terminate after one year if he remained free of violations or pending violations and he paid his restitution in full.  In other words, Mr. Lynnette was simply executing the Court's sentence. The Court and not Mr. Lynnette imposed the sentence and thus, Mr. Lynnette is not responsible for the harm alleged. Accordingly, the claims against Mr. Lynnette are **dismissed for failure to state a claim upon which relief may be granted.**

F.     *Summary*

Because the Court has been unable to identify a viable claim for relief against any particular defendant, Mr. Mosley's amended complaint is subject to dismissal.

### VI.     Conclusion and Entry of Final Judgment

Mr. Mosley's motion for appointment of counsel, dkt. [16], is **denied**. In addition, the Court screened Mr. Mosley's original complaint, identified the pleading deficiencies, and gave him an opportunity to show cause why judgment consistent with the Screening Order should not be entered. Rather than show cause why judgment should not be entered, Mr. Mosley filed an amended complaint changing the named defendants. But as explained above, Mr. Mosley has still failed to state a viable claim for relief. In these circumstances, offering Mr. Mosley another opportunity to amend would futile. Accordingly, Mr. Mosley's claims against the defendants are **dismissed with prejudice as factually frivolous and for failure to state a**

**claim, as specified above.** The **clerk is directed** to issue final judgment consistent with this Order.

  IT IS SO ORDERED.

Date:   8/25/2022

               _SARAH EVANS BARKER_ (signature)
               SARAH EVANS BARKER, JUDGE
               United States District Court
               Southern District of Indiana

Distribution:

JAMES LEE MOSLEY
931034
PUTNAMVILLE—CF
PUTNAMVILLE CORRECTIONAL FACILITY
Inmate Mail/Parcels
1946 West U.S. Hwy 40
Greencastle, IN 46135